UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAFRON CAPITAL CORPORATION, et. al.,

              Plaintiff,

        -against-

CHESAPEAKE ENERGY CORPORATION, et. al.,

           Defendants.

09-CIV-1826 (LTS)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF OKLAHOMA**

---

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ............................................................................ 2

III. ARGUMENT .................................................................................................... 5

    A. Legal Standard ..................................................................................... 5

    B. Transfer to the W. D. of Okla. Would Promote the Convenience of Parties and Witnesses, and the Interests of Justice .......................................... 7

        1. Oklahoma is Unquestionably the Locus of Operative Facts and Center of Gravity of the Dispute in Oklahoma ......................................... 7

        2. The Convenience of Material Witnesses Favors Transfer ...................... 10

        3. All Key Witnesses are Within the Subpoena Power of the Western District of Oklahoma .................................................................... 13

        4. The Convenience of the Parties Favors Transfer .................................... 13

        5. The Majority of Relevant Documents are in Oklahoma .......................... 14

        6. Relative Means of the Parties ................................................................. 15

        7. Familiarity of Forum with Governing Law ............................................ 16

        8. Plaintiff's Choice of Forum Should Be Accorded No Weight ............... 16

        9. The Western District of Oklahoma is Significantly Less Congested than the Southern District of New York ................................................. 17

IV. CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adair v. Microfield Graphics, Inc.*,
  2000 WL 1716340 (S.D.N.Y. Nov. 16, 2000) .......................................................... 14, 16

*Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc.*,
  2000 WL 33155640 (E.D.N.Y. Sept. 15, 2000) ............................................................... 7

*Berman v. Informix Corp.*,
  30 F. Supp. 2d 653 (S.D.N.Y. 1998)................................................................... 6, 10, 17

*Billing v. Commerce One, Inc.*,
  186 F. Supp. 2d 375 (S.D.N.Y. 2002)............................................................................. 7

*Bionx Implants, Inc. v. Biomet, Inc.*,
  1999 WL 342306 (S.D.N.Y. May 27, 1999) .................................................................. 16

*Bristol-Myers Squibb Co. v. Andrx Pharm. LLC, et al.* ,
  2003 WL 22888804 (S.D.N.Y. Dec. 5, 2003) ........................................................... 6, 16

*Goggins v. Alliance Capital Mgnt., L.P.*,
  279 F. Supp. 2d 228 (S.D.N.Y. 2003)........................................................................... 13

*Greenwood Partners v. New Frontier Media Inc.*,
  2000 WL 278086 (S.D.N.Y. Mar. 14, 2000) ................................................................... 6

*Guidi v. Inter-Continental Hotels Corp.*,
  224 F.3d 142 (2d Cir. 2000)............................................................................................ 5

*Herbert v. Elec. Arts, Inc.*,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004)........................................................................... 10

*Hernandez v. Graebel Van Lines*,
  761 F. Supp. 983 (E.D.N.Y. 1991) ............................................................................... 17

*IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.*,
  730 F. Supp. 1278 (S.D.N.Y. 1990)................................................................................ 6

*In re Hanger Orthopedic Group, Inc.*,
  418 F. Supp. 2d 164 (E.D.N.Y. 2006) .......................................................................... 10

*In re Nematron Corp. Secs. Litig.*,
  30 F. Supp. 2d 397 (S.D.N.Y. 1998)............................................................... 6, 7, 14, 16

OHS West:260631535.3

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Stillwater Mining Co. Sec. Litig.*,
   2003 US Dist LEXIS 7983 ................................................................................ 7, 14

*Palace Exploration Co. v. Petroleum Dev. Co.*,
   41 F. Supp. 2d 427 (S.D.N.Y. 1998)................................................................. 7

*Reliance Ins. Co. v. Six-Star, Inc.*,
   155 F. Supp. 2d 49 (S.D.N.Y.  2001).................................................................. 6

*Royal & Sunalliance v. British Airways*,
   167 F. Supp. 2d 573 (S.D.N.Y. 2001)................................................................ 10

*United States v. Nature's Farm Products, Inc.*
   2004 WL 1077968 (S.D.N.Y. May 13, 2004) ................................................. 6

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)............................................................................................ 5

## STATUTES

28 U.S.C. § 1404(a) ................................................................................................. 1, 2, 5

Okl. Stat. 12, § 2004 ................................................................................................. 13

## OTHER AUTHORITIES

*2008 Federal Court Management Statistics,*  www.uscourts.gov/cgi-bin/cmsd2008.pl .............. 17

OHS West:260631535.3

I.      **INTRODUCTION**

Defendant Chesapeake Energy Corporation ("Chesapeake" or "the Company") and the individual defendants[1] respectfully move the Court to transfer this action to the Western District of Oklahoma, where Chesapeake is incorporated and has its principal place of business. As the Court is no doubt aware, securities class actions are almost invariably filed in the district in which the issuer has its principal place of business -- not more than half a continent away. The reasons for that long-settled convention are fully evident here. Plaintiff's departure from it appears to be based on the fact that its attorneys are located in New York.

It is difficult to hypothesize a more compelling case for transfer pursuant to 28 U.S.C. § 1404(a). None of the significant facts or events occurred in New York. The Registration Statement and Prospectus that purportedly contained the misstatements and omissions that comprise the basis of plaintiff's claims were prepared in Oklahoma with input from attorneys in Texas. Virtually all of the operative events -- including the activities claimed to have been misrepresented in the Registration Statement -- are centered in Oklahoma City, and that is where the vast majority of documents, decision-makers and witnesses are located.

Conducting this litigation in the Southern District of New York would impose a significant and unreasonable inconvenience on Chesapeake, the individual defendants and third party witnesses. Because this action purports to be asserted on behalf of a nationwide class, plaintiff's choice of forum is accorded no weight, and the location of plaintiff's counsel is irrelevant.

---

[1] Aubrey K. McClendon, Marcus C. Rowland, Michael A. Johnson, Richard K. Davidson, Frank A. Keating, Breene M. Kerr, Charles T. Maxwell, Merrill A. Miller, Jr., Donald L. Nickles, Frederick B. Whittemore

## II.    <u>FACTUAL BACKGROUND</u>

Chesapeake Energy Corporation is the largest independent producer of natural gas in the United States, and employs approximately 7,800 people.  All of the Company's executive staff are located at its headquarters in Oklahoma City, Oklahoma.

On February 25, 2009, Safron Capital filed this securities class action alleging violations of Sections 11 and 12 of the Securities Act of 1933 in connection with Chesapeake's July 15, 2008 secondary public offering of common stock (the "Offering").  Although the anticipated consolidated amended complaint has yet to be filed, it is clear from the subject matter of the current complaint that the "center of gravity" of this litigation is in Oklahoma.  That is where the due diligence and other work regarding the registration statement and prospectuses used in connection with the Offering was focused.  *See* Declaration of Jennifer M. Grigsby[2] ("Grigsby Decl.") ¶ 9; Declaration of Marcus C. Rowland ("Rowland Decl.") ¶ 19; Declaration of Michael A. Johnson ("Johnson Decl.") ¶ 16; Declaration of Jeffrey L. Mobley ("Mobley Decl.") ¶ 13.  It is also where the operational activities (*e.g.,* hedging, accounting, auditing, land acquisition and leasing decisions) put at issue in the Complaint occurred.  *See, e.g.,* Compl. ¶ 42.

The Offering was conducted pursuant to a shelf registration as part of a continuous offering process that incorporated prior SEC disclosures and utilized a common prospectus that was updated in a prospectus supplement.  *See* Grigsby Decl. ¶ 18.  Because it was part of a continuous offering, much of the pertinent due diligence occurred on an ongoing basis prior to the Offering.  *Id*. at ¶ 19.  Those ongoing efforts included periodic due-diligence visits by

---

[2] The factual statements set forth in this motion are supported by the detailed declarations filed herewith of five witnesses who have personal knowledge of facts relevant to plaintiff's claims, and the facts demonstrating precisely why this action should be transferred to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a):  Declaration of Jennifer M. Grigsby; Declaration of Michael A. Johnson; Declaration of Marcus C. Rowland; Declaration of Jeffrey L. Mobley; Declaration of Henry J. Hood.

members of the underwriting syndicate to Chesapeake's Oklahoma City headquarters.  Grigsby Decl. ¶ 21; Mobley Decl. ¶ 13.

The work performed in connection with the various SEC filings that were incorporated by reference in the Registration Statement was also centered in Oklahoma City. Grigsby Decl. ¶ 23.  Documents related to those filings are maintained at Chesapeake's headquarters in Oklahoma City.  *Id.* at ¶ 27.

Most of the Company's contacts with the underwriters that were specifically in connection with the July 15, 2008 Offering were with UBS Investment Bank ("UBS") and Lehman Brothers ("Lehman"), who served as the primary managing underwriters on the Offering.  The Lehman and UBS personnel primarily responsible for the additional work performed in connection with the Offering are located in their respective Houston offices – not in New York. *Id.* at ¶ 14.

Diligence specific to the Offering included four scheduled due diligence phone calls.  *Id.* at ¶ 22.  The phone calls included the "legal" call, hosted by Henry Hood, Chesapeake's General Counsel, in Oklahoma City; the "business" call hosted by Marc Rowland, Chesapeake's Executive Vice President and Chief Financial Officer, in Oklahoma City; the "auditor" call hosted by Chesapeake's auditors, PricewaterhouseCoopers ("PwC") in Tulsa, Oklahoma; and the "reserve" call conducted with Chesapeake's outside reserve engineers in Houston, Dallas and Tulsa, and Chesapeake's internal reserve engineers in Oklahoma City.  *Id.*

The hedging activities referred to in paragraphs 30, 31, and 39 of the Complaint are conducted entirely from the Company's Oklahoma City headquarters.  Rowland Decl. ¶ 6. The individuals responsible for developing and implementing Chesapeake's hedging strategies, CFO Marc Rowland and CEO Aubrey McClendon and V.P. of Investor Relations Jeff Mobley,

conduct those activities from the Company's headquarters in Oklahoma City.  Rowland Decl ¶ 5.

The back office support and all documents related to the hedging transactions are also located in

Oklahoma City.  *Id.* at ¶ 8.  Meetings with hedging counterparties, including Lehman, occurred

either by telephone or at Chesapeake's headquarters.  *Id.* at ¶ 7.  The hedging transactions with

Lehman referred to in paragraphs 30-31 of the Complaint, were conducted between Company

personnel in Oklahoma City and Lehman personnel located in Houston (not New York).  *Id.* at

¶ 11.

The land leasing activities referred to in paragraph 41 of the Complaint are also

centered at the Company's headquarters in Oklahoma City, by and under the direction of

Chesapeake's Senior Vice President Land and Legal, Henry J. Hood.  Hood Decl. ¶¶ 8, 11.  All

final decisions regarding the Company's land leasing activities, including final review of prices

and contract terms, occurs in Oklahoma City.  *Id.* at ¶ 12.  All of the significant documents

related to the Company's land leasing activities, and all of the people with significant

information regarding such activities, are in Oklahoma City.  *Id.* at ¶¶ 13-14.

Similarly, all of Chesapeake's accounting functions (including with respect to the

goodwill, hedging and leasing activities, and the writedown referred to in paragraph 42 of the

Complaint) are conducted in the state of Oklahoma.  Johnson Decl. ¶ 7.  The Accounting

Department is responsible for all aspects of the financial statements, and reviews them prior to

inclusion in the Registration Statement.  The PwC personnel who audited and/or reviewed the

financial statements and related disclosures in the Registration Statement SEC filings it

incorporated by reference are located in Tulsa and Oklahoma City.  Grigsby Decl. ¶ 15.

Chesapeake's internal audit function is also centered at the Company's

headquarters, and is directed primarily by Linda Havrilla in Oklahoma City.  Johnson Decl. ¶ 11.

The Accounting Department is based in Oklahoma City, with a few employees currently transitioning from Chesapeake's Charleston, West Virginia office to Oklahoma City. *Id*. at ¶ 7.

All of the information included in the Registration Statement was reviewed, synthesized and inserted into the document by Chesapeake personnel in Oklahoma City, and by Chesapeake's securities counsel, Bracewell & Giuliani, in Texas. Grigsby Decl. ¶ 20. Following the pattern of other offerings, the Registration Statement was reviewed and then commented on by underwriters in Texas and the auditors in Oklahoma. The records relating to the Registration Statement are located in Oklahoma City. *Id*. at ¶ 27.

Chesapeake did not conduct a traditional road show in connection with the Offering. Mobley Decl. ¶ 14. Instead, the Company conducted conference calls with prospective investors from its offices in Oklahoma City. Grigsby Decl. ¶ 25.

## III.    ARGUMENT

### A.    Legal Standard

"[F]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute is designed to allow an "easy change of venue within a unified federal system." *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 148 (2d Cir. 2000).

Accordingly, courts have broad discretion to transfer actions to another district court "to prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.''" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). If (as in this case) the action might originally have been brought in the proposed transferee forum, the Court must consider whether the transfer would, in "the interest of justice," promote the goals of

convenience and efficiency.  *Reliance Ins. Co. v. Six-Star, Inc.*, 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001).  This case easily satisfies all of the applicable criteria.

Questions of convenience, efficiency and the interests of justice are analyzed in terms of:  (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses;  (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998), *citing Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203 (S.D.N.Y. 1998).  As discussed below, those factors overwhelmingly favor a transfer of this case to the Western District of Oklahoma.

Securities class actions are routinely filed in the jurisdiction of the defendant corporation's headquarters.  When they are filed elsewhere, courts do not hesitate to transfer them to that district.  *See, e.g., Greenwood Partners v. New Frontier Media Inc.*, 2000 WL 278086, at *5 (S.D.N.Y. Mar. 14, 2000); *In re Nematron Corp.*, 30 F. Supp. 2d at 405; *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 661 (S.D.N.Y. 1998); *IBJ Schroder Bank & Trust Co. v. Mellon Bank, N.A.*, 730 F. Supp. 1278, 1281 (S.D.N.Y. 1990).  Even outside the securities context, courts routinely transfer cases to the district in which defendant's headquarters is located, despite the fact that some of the relevant events occurred in the forum selected by the plaintiff.  *See, e.g., United States v. Nature's Farm Products, Inc.* 2004 WL 1077968, at *5 (S.D.N.Y. May 13, 2004); *Bristol-Myers Squibb Co. v. Andrx Pharm. LLC, et al.* , 2003 WL 22888804, at *3 (S.D.N.Y. Dec. 5, 2003); *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375

(S.D.N.Y. 2002); *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427 (S.D.N.Y. 1998).

        **B.**    <u>Transfer to the W. D. of Okla. Would Promote the Convenience of Parties and Witnesses, and the Interests of Justice</u>

None of the operative events took place in New York.  Nearly all such events occurred at Chesapeake's corporate headquarters, and the vast majority of material witnesses and documents are located in Oklahoma.

        **1.**    **Oklahoma is Unquestionably the Locus of Operative Facts and Center of Gravity of the Dispute in Oklahoma**

The location of the operative events is a "primary factor" in deciding a motion to transfer under Section 1404(a).  *See, e.g., Billing*, 186 F. Supp. 2d at 377.  "Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district."  *In re Nematron*, 30 F. Supp. 2d at 404 (sale and purchase of stock in New York did not pull locus away from forum where financial statements were issued and in which due diligence and audits took place).  *See also In re Stillwater Mining Co. Sec. Litig.*, 2003 US Dist LEXIS 7983 (transferring to location where alleged misrepresentations occurred, as it was "center of gravity," despite shares being listed on NYSE); *Advance Relocation & Storage, Inc. v. Wheaton Van Lines, Inc.*, 2000 WL 33155640, at *8 (E.D.N.Y. Sept. 15, 2000).

Moreover, the Offering at issue occurred in Oklahoma City.  By operation of law, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received."  *In re Nematron*, 30 F. Supp. 2d at 404, *quoting Purcell Graham, Inc. v. National Bank of Detroit,* 1994 WL 584550, at *4 (S.D.N.Y. Oct. 24, 1994).

Chesapeake's headquarters is the hub for all of its business decisions, including the Company's business strategy and all aspects of the Company's operations.  All of the key

decisions and activities on which this Complaint is based took place at Chesapeake's headquarters in Oklahoma City. *See* Grigsby Decl ¶ 7; Mobley Decl. ¶ 10; Rowland Decl. ¶¶ 6, 19-21; Johnson Decl. ¶ 7; Hood Decl. ¶ 8.

Meetings of the "working group" for the Offering occurred via telephone conference from Chesapeake's headquarters. All twelve of Chesapeake's representatives in the working group live and work in Oklahoma City. Grigsby Decl. ¶13. Lehman and UBS visited Chesapeake's headquarters in the course of periodic due diligence conducted in Oklahoma, and participated in the telephone conference regarding the Offering from their offices in Houston, Texas. *Id*. at ¶¶ 14, 21.

Chesapeake executives and their staffs conducted their own due diligence regarding the Offering in Oklahoma City, and provided information requested by the underwriters, auditors and others involved in the Offering from the Company's corporate headquarters. Hood Decl. ¶ 16; Grigsby Decl. ¶¶ 21-22; Mobley Decl. ¶¶ 11, 13; Rowland Decl. ¶¶ 14-18. The four core due diligence conference calls related to the Offering were also centered in Oklahoma: legal (conducted by Henry Hood in Oklahoma City); business (conducted by Marc Rowland in Oklahoma City); auditor (conducted by PwC in Tulsa, Oklahoma) and reserve (conducted by Chesapeake's outside reserve engineers in Houston, Dallas, and Tulsa, and Chesapeake's internal reserve engineers in Oklahoma City). Grigsby Decl. ¶ 22.

As noted above, the drafting and preparation of the Registration Statement and Prospectus that the Complaint alleges were false or materially misleading took place at Chesapeake's headquarters, and at the Houston and Dallas law offices of Bracewell & Giuliani. Grigsby Decl. ¶ 20. Public announcements regarding the Offering were issued from Chesapeake's headquarters. The activities plaintiff alleges were the subject of purported

-8-

misstatements and/or omissions -- including hedging and leasing practices, internal controls, accounting for write-downs and goodwill and interactions with Lehman -- also occurred at Chesapeake's headquarters.  *See* Compl. ¶ 42.

      As demonstrated, Chesapeake's hedging program is primarily managed by Marc Rowland, Aubrey McClendon and Jeff Mobley, all of whom work at corporate headquarters. Rowland Decl. ¶ 5.  Mr. Rowland meets with hedging counterparties there, and conducts negotiations and trades by telephone from Oklahoma, where the back office functions are maintained.  *Id*. at ¶ 8.  Mr. Rowland also managed the relationship with Lehman, including hedging arrangements, from Oklahoma.  *Id*. at ¶ 11.

      The Land Department, which is headed by Henry Hood, is centered, managed and directed in and from Oklahoma City.  Hood Decl. ¶ 12.  The final review of prices and contract terms related to land leases entered into by Chesapeake occurs in Oklahoma City.  *Id*. at ¶ 8.  The individual employees that oversee all aspects of the Company's leasing activities are either located in Oklahoma City or in the process of relocating there.  *Id*. at ¶ 11.

      The material activities of third parties related to the Offering that did not take place at Chesapeake's headquarters occurred in or near Oklahoma -- and far from New York. PwC participated in the Offering from its Oklahoma City and Tulsa, Oklahoma offices. Chesapeake's outside counsel, Bracewell & Giuliani, participated from Houston and Dallas.  The independent reserve engineers, including Ryder Scott, Netherland Sewell, and Lee Keeling and Associates, participated from Houston, Dallas and Tulsa, Oklahoma. Grigsby Decl. ¶¶ 15-17.

      In short, all of the significant activities related both to the Offering, and to the subjects, operations and decisions that allegedly were misportrayed in the Registration Statement and Prospectus, are centered in Oklahoma.  To the extent they did not occur in Oklahoma City,

OHS West:260631535.3

the significant activities of third parties who were involved in the Offering occurred in Houston, Dallas and Tulsa.  Nothing of consequence occurred in or near New York.  Even the key employees at the underwriters were based in Texas.

### 2.    The Convenience of Material Witnesses Favors Transfer

The "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Berman v. Informix Corp.*, 30 F. Supp. 2d at 657.  The assessment of the convenience of witnesses focuses on an evaluation of both the number of witnesses and "the materiality, nature, and quality of each witness …." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001); *see Herbert v. Elec. Arts, Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).  It certainly cannot be disputed that it would be more convenient for the majority of the witnesses – who are located in Oklahoma City – to travel just 17 miles to the Western District of Oklahoma, as opposed to the nearly 1,500 miles to the Southern District of New York.

### a.    Key Chesapeake Non-Party Witnesses

When a company is headquartered in a district other than the one in which it was sued, and its senior management and other witnesses are located there, it has a "compelling claim" for transfer because trial in the district selected by the plaintiff "carries a real risk of disrupting company operations." *In re Hanger Orthopedic Group, Inc.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006).  All of Chesapeake's senior management, and all of the other key employees who might be called as witnesses, are located in (or in a few instances in the process of transferring to) Oklahoma City.  There are no Chesapeake employees with knowledge related to this litigation in New York.

Chesapeake's directors, and its CEO and Chairman, Executive Vice President and Chief Financial Officer, are named as defendants.  Forcing them to travel to New York for trial

would seriously disrupt the management and operations of the Company.  Other employees not
named in the Complaint play key roles in Chesapeake's management and operations and are also
potential witnesses.  The following chart identifies some of the Chesapeake witnesses who would
likely testify as to the allegations in the Complaint:

| Non-Party Witness | Information Available | Location |
|---|---|---|
| Jennifer Grigsby, Corporate Secretary | Preparation of registration statement and prospectus; decisions relating to Offering. Compl. ¶¶ 42, 51, 61 | Oklahoma City (WD Okla.) |
| Other non-party officers and senior management | Preparation of registration statement and prospectus; decisions relating to Offering. Compl. ¶¶ 42, 51, 61 | Oklahoma City (WD Okla.) |
| Kajsa Greenhoward | Accounting practices and disclosures, including accounting for goodwill, write-downs, and financial statements. Compl. ¶¶ 42, 51, 61 | Oklahoma City (W.D. Okla.) |
| Other members of the Accounting department, including Tracy Cook, Eric Fares, and Mary Ann Sanders | Accounting practices and disclosures, including accounting for goodwill, write-downs, and financial statements. Compl. ¶¶ 42, 51, 61 | Oklahoma City (W.D. Okla.) or Charleston, West Virginia |
| Jeff Mobley | Hedging practices and disclosures. Compl. ¶¶ 42 | Oklahoma City (W.D. Okla.) |
| Emily Blashke and David Griffith | Investor relations, including roadshows, relating to the Offering | Oklahoma City (W.D. Okla.) |
| Land Department, including Henry Hood, Vice President of Land and Legal; | Leasing practices and policies. Compl. ¶ 42(c) | Oklahoma City (W.D. Okla.) |
| Mary L. Byrd, Gary Dunlap, Brian Exline, Ronnie D. Ward Vice Presidents of Land | Leasing practices and policies. Compl. ¶ 42(c) | Oklahoma City (W.D. Okla.) |
| Internal Audit Employees, including Linda Havrilla | Internal controls. Compl. ¶42(e) | Oklahoma City (W.D. Okla.) |
| Members of the Treasury | Preparation of registration | Oklahoma City (WD Okla.) |

-11-

| department, including Amy Sanders | statement and prospectus; decisions relating to Offering. Compl. ¶¶ 42, 51, 61 | |
|---|---|---|
| Internal Reservoir Engineers, Gary Egger and Paul Lupartus | Preparation of Chesapeake's Reserve Report | Oklahoma City (W.D. Okla.) |

These employees -- and others -- would present valuable, material testimony. They are the principal sources of information relating to the Offering, including the drafting of the Prospectus and Registration Statement. They are also important witnesses regarding the various activities alleged to have been the subject of misrepresentations in those documents. Each of them is located in Oklahoma City.

### b.    Key Non-Chesapeake Witnesses

Most of the non-Chesapeake witnesses live and work in Oklahoma or Texas, not in New York. The PwC employees who worked on the Offering, and audited or reviewed the financial statements and related disclosures at issue, are located in Oklahoma. They include Martin Fiscus and Nicole Wier in PwC's Tulsa Office and Jennifer Herrom and other members of the audit team in Oklahoma City. Grigsby Decl. ¶ 15. Most of the Lehman personnel involved in the Offering worked in the Global Natural Resources Group in Houston. They include Greg Pipkin, Brad Hutchinson, Hank Hilliard, Keith Burba, Will Hodge, Gabe Lo and Houston Johnson. *Id*. at ¶14. The key UBS employees involved in the Offering, including Stephen Trauber, Chip Van Os, Michael Ure, Hillary Garris, Laura Arjona and Rosamond Howard, are also in Houston. *Id*. at ¶14. The independent reserve engineers who were part of the due diligence process and provided opinions in connection with natural gas reserves listed and described in the Registration Statement and in the SEC filings it incorporated by reference, are in Dallas, Houston and Tulsa. *Id*. at ¶17.

-12-

Litigation in Oklahoma City, 450 Miles from Houston, 200 Miles from Dallas, and 100 miles from Tulsa, would obviously be more convenient for those third party witnesses. Indeed, they regularly travel (or in the case of Lehman, traveled) to Oklahoma City in the course of the work they perform for Chesapeake, and/or in connection with the Company's securities offerings. Their testimony is highly material to the litigation. To the best of Chesapeake's knowledge, not a <u>single</u> material witness is in the Southern District of New York. Taken together with the convenience of the party and non-party Chesapeake witnesses, this factor weighs overwhelmingly in favor of transfer to the Western District of Oklahoma.

> **3.      All Key Witnesses are Within the Subpoena Power of the Western District of Oklahoma**

Most of the key witnesses in this case reside in or near Oklahoma City, the Western District of Oklahoma, where they are amendable to compulsory process. Oklahoma's long arm statute reaches the entire state of Oklahoma. Okl. Stat. 12, § 2004. Accordingly, any witness in the state may be compelled to testify at trial. As discussed above, nearly all of the relevant witnesses are located in Oklahoma. They plainly are not within the subpoena power of the Southern District of New York. Nor are any of the significant third-party witnesses who reside outside Oklahoma amendable to process in the Southern District of New York. This factor, therefore, also overwhelmingly favors transfer.

> **4.      The Convenience of the Parties Favors Transfer**

Trials in securities class actions focus almost entirely on the conduct of the defendant; "[a]ccordingly, the convenience of the defendants and witnesses is the appropriate focus" in determining a motion to transfer a securities class action. *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 233 (S.D.N.Y. 2003). As noted above, a trial in the Southern District of New York would substantially inconvenience Chesapeake, its employees and most of

the individual defendants.  Individual defendants with key knowledge of the facts of the

activities on which this case is based include Michael Johnson, Chief Accounting Officer,

Aubrey McClendon, Chief Executive Officer, and Marc Rowland, Chief Financial Officer.  Mr.

Johnson, Mr. McClendon and Mr. Rowland, and each of their staffs, work at Chesapeake's

headquarters and make important decisions at Chesapeake on a daily basis.

        Litigation in Oklahoma City would be far more convenient for them, and for the

Company.  Grigsby Decl. ¶ 28; Rowland Decl. ¶ 26; Mobley Decl. ¶ 19; Hood Decl. ¶ 18;

Johnson Decl. ¶ 23.   The potential witnesses who are not employees of Chesapeake, including

the underwriter defendants, auditors, hedging counterparties, and attorneys who worked on the

Offering and related documents, are located almost exclusively in Oklahoma and Texas.

        Because securities class actions "focus almost entirely on the defendants'

conduct," plaintiffs' individual knowledge is not a significant factor.  *In re Nematron*, 30 F.

Supp. 2d at 402; *Adair v. Microfield Graphics, Inc.*, 2000 WL 1716340, at *2 (S.D.N.Y. Nov.

16, 2000).  Even if plaintiffs' residence <u>were</u> relevant, the lead plaintiff resides in the Northern

District of Ohio -- not in New York.

     **5.**     **The Majority of Relevant Documents are in Oklahoma**

        The location of documents is  "clearly an important consideration in motions to

transfer pursuant to 28 U.S.C. S 1404(a)."  *In re Nematron*, 30 F. Supp. 2d at 403.  Although the

conveniences of copying, faxing, or scanning may have lessened the burden of transporting

documents, the location of the bulk of the documents still is a factor that weighs in favor of

transfer.  *See, e.g., In re Nematron*, 30 F. Supp. 2d at 404 (copying and shipping documents

"would impose an extra cost that is unnecessary as it is anticipated that the documents in

[transferee forum] will likely be far greater in scope than relevant documents outside of

[transferee forum]"); *In re Stillwater*, 2003 US Dist LEXIS 7983, at *12 ("[w]hile it is true that

documents can be transported from state to state, for purposes of weighing transfer factors, the fact that the documents are all currently located in [the transferee forum] favors transfer").

Here, the majority of relevant documents are in Oklahoma City, at Chesapeake's headquarters.  Other documents may be available in Tulsa, Oklahoma, Dallas and Houston.  The following chart identifies several categories of key evidence and its location:

| Documentary Evidence | Location |
|---|---|
| Physical and Electronic document databases | Oklahoma City |
| Email servers | Oklahoma City |
| Board of Director meeting minutes | Oklahoma City |
| Internal Audit department files | Oklahoma City |
| Hedging documents | Oklahoma City |
| Analyst Reports | Oklahoma City |
| PricewaterhouseCoopers (outside auditors) files | Tulsa or Houston |

### 6.     Relative Means of the Parties

This factor is meaningless in the context of this case.  Plaintiffs will not incur significant costs in prosecuting this class action.  Coughlin Stoia, the law firm that has been appointed lead counsel, is in the business of bringing and financing securities class actions, and "is active in major litigations pending in federal and state courts throughout the United States." Exhibit B to the Affidavit of David Rosenfeld, Ct. Rec. 26.  Moreover, the lead plaintiff, United Food and Commercial Workers Union Local 880 ("UFCW"), is an institutional investor located in Cleveland, Ohio, not in New York.

### 7.      Familiarity of Forum with Governing Law

This case involves federal securities law, not the law of a particular state.  "[A]ny district court may handle a [federal case] with equal skill."  *Bionx Implants, Inc. v. Biomet, Inc.*, 1999 WL 342306, at *5 (S.D.N.Y. May 27, 1999) (involving the False Claims Act).  *See, e.g., Bristol-Myers Squibb Co.*, 2003 WL 22888804, at *4 (involving patent law).  Accordingly, this factor is neutral.

### 8.      Plaintiff's Choice of Forum Should Be Accorded No Weight

In class actions, plaintiff's choice of forum is typically accorded little weight.  *In re Nematron*, 30 F. Supp. 2d at 405 (citing *In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995).  "[T]he residence of a class representative is often a mere happenstance, which may be discounted by a court when weighing transfer factors." *Adair*, 2000 WL 1716340, at *2 (internal quotation marks omitted).  When the chosen forum bears a tenuous connection to the material facts, as in this case, plaintiff's choice is given even less weight.  *Id.*  As demonstrated above, this case purports to be a national class action and has no meaningful connection to the Southern District of New York.

Moreover, the investor that has been appointed lead plaintiff, UFCW, <u>did not even choose</u> this forum.  The lawsuit was filed by Coughlin Stoia, which has offices in New York, on behalf of Safron Capital.  When it appeared that Safron Capital did not have a large enough loss to prevail in the lead plaintiff/counsel contest, it was jettisoned in favor of UFCW.  UFCW has not even filed a complaint.  It is thus abundantly clear that this action is being maintained in New York for the convenience of plaintiff's counsel, and it is black letter law that "convenience of counsel is not a consideration in the transfer analysis." *Bionx Implants, Inc.*, 1999 WL 342306, at *4.

OHS West:260631535.3

9.    **The Western District of Oklahoma is Significantly Less Congested than the Southern District of New York**

The docket conditions of the transferor and transferee courts are also relevant to the determination of a motion to transfer.  *Berman*, 30 F. Supp. 2d at 660; *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 991 (E.D.N.Y. 1991).

According to the most recently available Federal Court Management Statistics, this Court's docket is significantly more congested than the docket of the Western District of Oklahoma.  In 2008, the average time for a civil case to reach trial in the Southern District of New York (28 months) was twice as long as in the Western District of Oklahoma (14.5 months). *See 2008 Federal Court Management Statistics, available at* www.uscourts.gov/cgi-bin/cmsd2008.pl.  Similarly, while the average judge in the Southern District of New York had 929 cases pending in 2008, in the Western District of Oklahoma the average number of pending cases per judge was only 223.

IV.    <u>CONCLUSION</u>

It is difficult to imagine a more compelling case for a transfer pursuant to Section 1404(a).  The <u>only</u> factor that might arguably favor litigation in New York, the location of plaintiff's counsel, is irrelevant as a matter of law.

May 29, 2009                    Respectfully submitted,

                                Orrick, Herrington & Sutcliffe LLP


                                By:     /s/ Robert P. Varian
                                        Robert P. Varian
                                        Joseph Giometti
                                        Lily Becker

                                    The Orrick Building
                                    405 Howard Street
                                    San Francisco, CA  94105-2669
                                    +1-415-773-5700
                                Attorneys for Defendants
                                    Chesapeake Energy Corporation, Aubrey K.
                                    McClendon, Marcus C. Rowland, Michael A.
                                    Johnson, Richard K. Davidson, Frank A.
                                    Keating, Breene M. Kerr, Charles T. Maxwell,
                                    Merrill A. Miller, Jr., Donald L. Nickles,
                                    Frederick B. Whittemore

-18-

## CERTIFICATE OF SERVICE

I, Robert Varian, hereby certify that on May 29, 2009 I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification to all CM/ECF subscribers, and caused a true and correct copy to be sent via U.S. Mail to any and all non-CM/ECF participants who are required to be manually served in this case.

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed May 29, 2009.


May 29, 2009                              Respectfully submitted,

                                          Orrick, Herrington & Sutcliffe LLP


                                          By:____*/s/ Robert P. Varian*_____
                                                  Robert P. Varian
                                                  Joseph Giometti
                                                  Lily Becker

                                          The Orrick Building
                                          405 Howard Street
                                          San Francisco, CA  94105-2669
                                          +1-415-773-5700
                                          Attorneys for Defendants
                                              Chesapeake Energy Corporation, Aubrey K.
                                              McClendon, Marcus C. Rowland, Michael A.
                                              Johnson, Richard K. Davidson, Frank A.
                                              Keating, Breene M. Kerr, Charles T. Maxwell,
                                              Merrill A. Miller, Jr., Donald L. Nickles,
                                              Frederick B. Whittemore

## Mailing Information for a Case 1:09-cv-01826-LTS

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

**Hissan Ahsan Bajwa**

hissanbajwa@paulhastings.com,hissan@gmail.com

**Lily I. Becker**

lbecker@orrick.com

**Jack Gerald Fruchter**

jfruchter@aftlaw.com

**Joseph E. Giometti**

jgiometti@orrick.com

**Daniel Bruce Goldman**

dangoldman@paulhastings.com

**Christopher J. Keller**

ckeller@labaton.com,ejo@labaton.com,ElectronicCaseFiling@labaton.com

**Mark Peter Kindall**

firm@izardnobel.com

**David Avi Rosenfeld**

drosenfeld@csgrr.com,e_file_ny@csgrr.com

**Reagan Therese Roth**

reaganroth@paulhastings.com

**Samuel Howard Rudman**

srudman@csgrr.com,e_file_ny@csgrr.com

**Barry G. Sher**

BarrySher@paulhastings.com,LawrenceMehringer@paulhastings.com

**Robert P. Varian**

rvarian@orrick.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Mary K. Blasy**
Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101