UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

SAFRON CAPITAL CORPORATION,
Individually and On Behalf of All Others
Similarly Situated,

                        Plaintiff,

       vs.

CHESAPEAKE ENERGY CORPORATION,
et al.,

                   Defendants.

—————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:09-cv-01826-LTS

<u>CLASS ACTION</u>

LEAD PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. §1404(A)

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................1

II.  STATEMENT OF FACTS .......................................................................................3

III.  ARGUMENT ..........................................................................................................5

    A.  As this Court Has Held, Defendants Must Carry the Significant Burden of Clearly and Convincingly Establishing an Entitlement to Transfer .......................5

    B.  Defendants' Motive in Requesting Transfer is Disingenuous ................................6

    C.  Considerable Weight Is Accorded to Lead Plaintiff's Choice of Forum................6

    D.  Convenience of the Parties and Witnesses.............................................................7

    E.  The Location of Relevant Documents, the Locus of Facts At Issue, and Availability of Compulsory Process All Favor New York......................................9

IV.  CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Albert Fadem Trust v. Duke Energy Corp.*,
    214 F. Supp. 2d 341 (S.D.N.Y. 2002) ................................................................. 9

*Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v.*
    *LaFarge North Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ................................................................. 9

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ................................................................................. 6

*Day Vill. L.P. v. CW Capital L.L.C.*,
    No. 06 Civ. 3424 (LTS) (HBP), 2006 U.S. Dist. LEXIS 63715
    (S.D.N.Y. Sept. 6, 2006) ..................................................................................... 6

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002) ................................................................................. 7

*Earley v. BJ's Wholesale Club, Inc.*,
    No. 06 Civ. 3529 (WHP), 2007 U.S. Dist. LEXIS 40125
    (S.D.N.Y. June 4, 2007) ...................................................................................... 5

*Funke v. Life Fin. Corp.*,
    No. 99 Civ. 11877 (CBM), 2003 U.S. Dist. LEXIS 1226
    (S.D.N.Y. Jan. 25, 2003) ..................................................................................... 9

*Hummingbird USA, Inc. v. Tex. GSL Corp.*,
    No. 06 Civ. 7672 (LTS) (GWG), 2007 U.S. Dist. LEXIS 4596
    (S.D.N.Y. Jan. 22, 2007) ............................................................................ 5, 7, 9

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992) ............................................................................... 5

*In re Geopharma, Sec. Litig.*,
    No. 04 Civ. 9463 (SAS), 2005 U.S. Dist. LEXIS 8885
    (S.D.N.Y. May 11, 2005) ............................................................................ 6, 7, 9

*In re Nematron Corp. Sec. Litig.*,
    30 F. Supp. 2d 397 (S.D.N.Y. 1998) .............................................................. 7, 11

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ................................................................................. 6

**Page**

*Malone v. Commonwealth Edison Co.*,
   2 F. Supp. 2d 545 (S.D.N.Y. 1998)....................................................................5

*Oxford First Corp. v. PNC Liquidating Corp.*,
   372 F. Supp. 191 (E.D. Pa. 1974) ....................................................................10

*Pilates v. Pilates Inst.*,
   891 F. Supp. 175 (S.D.N.Y. 1995)....................................................................5

*Reliance Ins. Co. v. Six Star, Inc.*,
   155 F. Supp. 2d 49 (S.D.N.Y. 2001)..................................................................8

*Steinberg & Lyman v. Takacs*,
   690 F. Supp. 263 (S.D.N.Y. 1988)....................................................................10

*Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*,
   976 F. Supp. 174 (W.D.N.Y. 1997) ...................................................................8

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
   §1404(a) ...............................................................................................1, 2, 5

Securities Act of 1933.......................................................................................4

Lead Plaintiff United Food and Commercial Workers Union-Local 880 Retail Food Employers Pension Fund ("Lead Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' motion, pursuant to 28 U.S.C. §1404(a), to transfer venue from the Southern District of New York to the Western District of Oklahoma (the "Motion").

## I.      PRELIMINARY STATEMENT

Contrary to Defendants' dramatic characterization of this Motion as a "compelling case" for transfer, the Motion is, in actuality, nothing more than a transparent attempt to shift this litigation to a forum that Defendants would much prefer, despite there not being a reasonable basis for doing so. Indeed, conspicuously absent from Defendants' memorandum of law is an acknowledgment that Individual Defendants Frank A. Keating ("Keating") and Donald L. Nickles ("Nickles"), both of whom are members of Chesapeake's Board of Directors that signed the materially misleading Registration Statement at issue, served until recently as the Governor of Oklahoma and as a United States Senator from Oklahoma, respectively. It is thus not surprising that those Defendants, together with the other Individual Defendants and Defendant Chesapeake Energy Corporation ("Chesapeake" or the "Company," and, together with the Individual Defendants, "Defendants"), would like nothing more than to have this case heard in their "home" court, before their constituents in Oklahoma.

Notwithstanding their brazen gamesmanship (or because of it), Defendants have utterly failed to clearly and convincingly establish an entitlement to transfer this action to Oklahoma – an exceedingly heavy burden that they must carry. However, like Defendants' preference for Oklahoma, this, too, is not surprising. As set forth in more detail herein, the locus of this action is New York, the location of Lehman Brothers Holdings, Inc. ("Lehman") – the counterparty to certain contracts hedging Chesapeake's oil and natural gas production whose precarious financial condition and subsequent bankruptcy caused substantial losses to Chesapeake – is in New York, and New York is also the forum within which Lehman's bankruptcy proceeding is pending. As the Complaint

alleges, Chesapeake failed to disclose in the Registration Statement its substantial exposure to Lehman,  At all relevant times, Lehman, which will be a crucial witness, was based in New York. And, Lehman's bankruptcy proceedings are now pending in New York.

Moreover, although certain Chesapeake personnel who assisted in the preparation of the Registration Statement are located in Oklahoma, numerous other material witnesses are not.  Indeed, as Defendants' own submissions demonstrate, the vast majority of the individuals identified on the "working group list" for the secondary public offering at issue (the "Offering") were located in New York, including a substantial number of personnel associated with the Underwriter Defendants.[1] *See* July 7, 2008 Organizational Meeting Materials, annexed to the Declaration of Jennifer L. Grigsby, dated May 27, 2009, at IV-1 – IV-3.  Indeed, based on the telephone numbers listed therein, 45 people who worked on the Offering did so from New York: eleven from Lehman, eight from UBS, fourteen from BofA, three from RBS, three from Wells Fargo, two from Bracewell & Giuliani LLP, and four from Cravath, Swaine & Moore.  *Id.*

In contrast, only 15 people – twelve from Chesapeake and three from PricewaterhouseCoopers – were based in Oklahoma.  *Id.*  Defendants' conscious effort to pick and choose people off of the working group list who are located in Oklahoma, while ignoring the substantial number of personnel who are located in New York, is nothing more than a glaring attempt to ignore the totality of contacts that this case actually has to New York.  At the same time, Defendants' acknowledgment that certain witnesses are located in Texas or elsewhere outside of Oklahoma weighs heavily against transfer to the Western District of Oklahoma.  Consequently,

---

[1]    The Underwriter Defendants are Banc of America Securities LLC ("BofA"), UBS Investment Bank ("UBS"), ABN AMRO and Wells Fargo Securities ("Wells Fargo").

transferring this case to Oklahoma would merely shift the inconvenience of litigating here for Chesapeake and its affiliates to the Underwriter Defendants, Lehman and other non-party witnesses.

Furthermore, Chesapeake, whose 600 million shares of common stock are publicly traded on the New York Stock Exchange, has numerous other ties to New York, as does this case. In addition, Lead Plaintiff and presumably even the Underwriter Defendants, certain of which are located in New York themselves, would prefer that this action remain in this Court, where Defendants have conceded that it was properly commenced (as they must). While perhaps entitled to less deference than if this action were brought in an individual capacity, Lead Plaintiff's choice of forum is still entitled to *some* deference on this Motion. In contrast, Defendants' choice of forum is entitled to none, especially when their forum shopping is as transparent as it is here.

Accordingly, Lead Plaintiff respectfully requests that the Court deny the Motion in its entirety and retain jurisdiction over this action here, where it belongs.

## II.   STATEMENT OF FACTS

Chesapeake is the third largest independent producer of natural gas in the United States. ¶2.[2] The Company completed its initial public offering in 1993 and more than 600 million shares of its common stock publicly trade on the New York Stock Exchange. ¶9. As part of its business operations, Chesapeake partnered with Lehman, the now bankrupt investment bank, in a co-venture responsible for generating approximately 15% of Chesapeake's revenues in 2007. ¶30.

On July 15, 2008, Chesapeake completed the a secondary public offering of 28.75 million shares of common stock at $57.25 per share, receiving approximately $1.65 billion in gross proceeds, and net proceeds of $1.59 billion (*i.e.*, the Offering). ¶3. Among other things, the

---

[2]   "¶ __" refers to the Complaint for Violations of the Federal Securities Laws, filed on February 25, 2009 (the "Complaint").

Underwriter Defendants: (i) assisted in preparing and disseminating the Offering documents, including the Registration Statement at issue); (ii) conducted "due diligence" investigations and conference calls with Chesapeake management in connection with the Offering; and (iii) marketed the Offering to investors through multi-city roadshows. ¶¶25, 27. As compensation for their work on the Offering, the Underwriter Defendants received more than $51 million in fees from Chesapeake, as well as an option to purchase up to 3.75 million additional shares of the Company's common stock. ¶¶25, 36.

This action was filed on February 25, 2009, alleging violations of the Securities Act of 1933 (the "Securities Act") arising out of the materially inaccurate Registration Statement that Chesapeake and its constituents disseminated in connection with the Offering. ¶¶1-2. In essence, the Complaint alleges that the Registration Statement failed to disclose material risks facing prospective investors of Chesapeake common stock, including that Chesapeake itself had substantial exposure to Lehman, the counterparty to a significant portion of derivative contracts designed to hedge against declines in the Company's natural gas production. *See* ¶3(a), (b). As the investing public would only later discover, Lehman had tremendous financial problems that interfered with its ability to fulfill its financial commitments. ¶3(b). Unbeknownst to investors, Chesapeake's hedging strategy, which was designed to protect the Company from swings in natural gas prices, was meaningless and failed of its essential purpose. *Id.*

On October 10, 2008, Chesapeake issued a press release disclosing for the first time that Lehman was counterparty to a portion of Chesapeake's hedges on natural gas production and that Lehman would be unable to honor its commitment to Chesapeake. ¶43(a). As the truth about Chesapeake's exposure reached the market during late 2008 and early 2009, the price of Chesapeake stock plunged to less than $12 per share, about 80% below the Offering price. ¶4.

## III.    ARGUMENT

### A.    As this Court Has Held, Defendants Must Carry the Significant Burden of Clearly and Convincingly Establishing an Entitlement to Transfer

As this Court has observed, the party seeking transfer under 28 U.S.C. §1404(a) must carry a "'significant'" burden that requires a "'clear and convincing'" showing that transfer is appropriate. *Hummingbird USA, Inc. v. Texas Guaranteed Student Loan Corp.*, No. 06 Civ. 7672 (LTS) (GWG), 2007 U.S. Dist. LEXIS 4596, at *4 (S.D.N.Y. Jan. 22, 2007) (quoting *Pilates v. Pilates Inst.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995)).   To determine whether a movant has made such a showing, "[c]ourts routinely consider nine factors":

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Hummingbird*, 2007 U.S. Dist. LEXIS 4596, at *5.[3]   However, a court need not give each factor equal weight and may consider factors outside of those listed above.   *Id.* (citing *Malone v. Commonwealth Edison Co.*, 2 F. Supp. 2d 545, 547 (S.D.N.Y. 1998).   Moreover, a court will determine whether transfer is appropriate "'on a case-by-case basis.'"   *Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ 3529 (WHP), 2007 U.S. Dist. LEXIS 40125, at *5 (S.D.N.Y. June 4, 2007) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)).

As demonstrated herein, Defendants have failed to make the requisite showing on this Motion, and their purported factual submissions merely demonstrate the need for discovery.

---

[3]    Plaintiffs agree with Defendants that two of these factors – the relative means of the parties, and the familiarity of the forum with the governing law at issue – have little bearing in this case.

### B.    Defendants' Motive in Requesting Transfer is Disingenuous

The transparent motive of Defendants' Motion is to have this case adjudicated in their backyard, where two of the Individual Defendants – Keating and Nickles – are prominent politicians who will presumably have a "home court" advantage – an advantage that Chesapeake and the other Individual Defendants no doubt believe will inure to their benefit, as well.  Indeed, Keating and Nickles, both of whom are members of Chesapeake's Board, have powerful political ties to Oklahoma that would afford them a significant tactical advantage if this case were litigated on their home turf:  Keating served as Governor of Oklahoma for eight years, from 1995 to 2003, prior to joining Chesapeake's Board; and Nickles served as a United States Senator from Oklahoma from 1981 to 2005 before joining the Board.  Thus, contrary to Defendants' contentions, the convenience of the witnesses is not of paramount importance to them.  Rather, this Motion is purely about gamesmanship.

"Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may [seek a change of venue] not because of genuine concern with convenience but because of similar forum-shopping reasons."  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) (discussing related doctrine of *forum non conveniens*).  Here, Defendants have done just that.

### C.    Considerable Weight Is Accorded to Lead Plaintiff's Choice of Forum

Notwithstanding Defendants' efforts to game the system, "plaintiff's choice of forum is usually given the greatest weight . . . ."  *In re Geopharma, Sec. Litig.*, No. 04 Civ. 9463 (SAS), 2005 U.S. Dist. LEXIS 8885, at *2 (S.D.N.Y. May 11, 2005); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (holding that plaintiff's choice of forum is "given great weight" and denying motion to transfer); *Day Vill. L.P. v. CW Capital L.L.C.*, No. 06 Civ. 3424 (LTS) (HBP), 2006 U.S. Dist. LEXIS 63715, at *8 (S.D.N.Y. Sept. 6, 2006) (same).

Moreover, although plaintiffs' choice may be accorded slightly less weight in a class action, "'[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum.'" *See Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *2-*3 (quoting *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002)).

Here, as noted above, the Southern District of New York is well-connected to the Offering because the Underwriter Defendants and numerous material non-party witnesses are located in New York, and because Chesapeake sold securities to New York investors, and disseminated their inaccurate statements here, in connection with the Offering.  Accordingly, Lead Plaintiff's choice of forum – the most important factor – is entitled to great deference, and Defendants cannot demonstrate anything to the contrary.[4]

### D.     Convenience of the Parties and Witnesses

The convenience of the parties and witnesses also strongly weighs against transfer.  In fact, one of Lead Plaintiff's primary motivations in choosing New York as its forum was as a matter of convenience for the parties and witnesses, such as the Underwriter Defendants, Lehman, and other non-party witnesses. *See, e.g.*, *Hummingbird*, 2008 U.S. Dist. LEXIS 4596, at *4 (observing that the Second Circuit considers convenience a legitimate motivation for plaintiff's forum choice and entitles plaintiff to a greater degree of deference).

In contrast, the Motion is brought only on behalf of Chesapeake and its defendant-affiliates, not the Underwriter Defendants, some of which are headquartered in New York.  *See, e.g.*, ¶¶21-22

---

[4]     Defendants' reliance on *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 407 (S.D.N.Y. 1998) is misplaced.  Indeed, there, the court found that even in a class action with minimal contact in the venue, the deference for plaintiff's choice of venue still "weigh[ed] moderately in favor" of the plaintiff.

(BofA and UBS).  The other Underwriter Defendants, while headquartered elsewhere (but not in Oklahoma), have strong ties to New York.  ¶¶23-24.

Moreover, Lehman, which was formerly headquartered in New York and now has its bankruptcy proceedings pending here, will be a source of material non-party witnesses and information – particularly because Lehman's financial condition, and its relationship with Chesapeake, are directly at issue in this action.  Further, since Lehman interacted with Chesapeake interacted in a wide variety of ways, including as investment banker, as counterparty to derivative contracts, as a party to Chesapeake's revolving bank credit facility, and as a co-venturer in major business dealings, employees from a variety of Lehman branches will be important witnesses who would be inconvenienced by traveling to Oklahoma.  ¶4.  As Defendants admit, the underwriter employees performing due diligence were not even located in Oklahoma, as they were often forced to "travel" to Chesapeake headquarters or participated in conference calls.  *See* Defendants' Memorandum of Law in Support of the Motion ("Def. Mem.") at 13.

Further, Defendants' claim that some of the employees from Lehman and UBS who were involved in the Offering were based in Houston, Texas, *see* Def. Mem. at 13, is of little assistance to Defendants because Houston is 450 miles from an Oklahoma City courtroom.  As such, a transfer of venue to Oklahoma from New York would hardly be more convenient for Houston-based witnesses from UBS or Lehman, let alone witnesses from BofA, ABN AMRO, and Wells Fargo or, for that matter, non-Houston based witnesses from UBS or Lehman.  In addition, even if the inconvenience of litigating in New York is equal to that of Oklahoma, this Court should deny transfer.  *See Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 58 (S.D.N.Y. 2001); *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997) (holding that "transfer would

merely shift the inconvenience from one party to the other, the plaintiff's choice of forum should not be disturbed.") (internal quotation marks and citations omitted).

Contrary to Defendants' contentions, the location of Chesapeake's headquarters in Oklahoma is not a dispositive factor entitled to great weight here, and courts routinely deny motions to transfer made on that basis. *See, e.g.*, *Hummingbird*, 2007 U.S. Dist. LEXIS 4596 at *11 (denying a motion to transfer to Texas made by a Texas-based defendant corporation); *Geopharma*, 2005 U.S. Dist. LEXIS 8885, at *5; *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343-34 (S.D.N.Y. 2002) (denying transfer to Western District of North Carolina, where corporate defendant was headquartered, where outside auditor and Underwriter Defendants were located in the Southern District of New York). Chesapeake is a large public corporation whose stock is traded on the New York Stock Exchange, with thousands of natural gas and oil wells as well as business dealings throughout the United States. It can hardly be said that a trial in this Court would "substantially inconvenience" Chesapeake, a multinational company with a market capitalization exceeding $14 billion. *See* Def. Mem. at 13.

### E. The Location of Relevant Documents, the Locus of Facts At Issue, and Availability of Compulsory Process All Favor New York

In contrast to Defendants' claims, all of the remaining factors also favor New York.

Although some documents are located in Oklahoma, Defendants have selectively chosen categories of "documentary evidence" that they conveniently store in Oklahoma. In doing so, however, Defendants have completely ignored the material information that the Underwriter Defendants and non-party witnesses maintain *outside* of Oklahoma and more likely found in New York. The fact that documents are now routinely produced electronically also means that any inconvenience placed on Defendants in keeping this action in the Southern District of New York is easily mitigated (if not entirely avoidable). *Funke v. Life Fin. Corp.*, No. 99 Civ. 11877 (CBM),

2003 U.S. Dist. LEXIS 1226, at *9 (S.D.N.Y. Jan. 25, 2003); *Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. LaFarge North Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."). Moreover, many of the key documents at issue will be in the possession of Lehman, which is undergoing bankruptcy proceedings in this District.

The locus of operative facts also favors New York. As noted above, the Offering is well-connected to New York. Indeed, New York is where the actual stock sales occurred. When Defendants made false and misleading statements through the Registration Statement, those statements were relied upon by investors in purchasing stock in the Company through the New York Stock Exchange, which is located in the Southern District. *See Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. 1974) (venue lies where defendant caused false or misleading statements to be transmitted into forum district); *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y. 1988) (stating that "'any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue'").

Defendants also admit that there were "four core due diligence conference calls" during which the Underwriter Defendants, Chesapeake employees and consultants discussed the legal, business, auditing, and reserve aspects of the Offering. Def. Mem. at 8. The fact that these key due diligence exercises were conducted by conference call, rather than in face-to-face meetings, demonstrates exactly the opposite of what Defendants seek to prove – that many of the key operative facts and relevant players related to the Offering were located outside of Oklahoma. *See id*. Similarly, Defendants argue that they "conducted conference calls with prospective investors from [Chesapeake's] offices in Oklahoma City," instead of the typical face-to-face meetings during roadshows, to show that the Offering was not associated with New York. Def. Mem. at 5. By this

backwards logic, phone calls to investors around the United States and the world would somehow show that the Offering was localized in Oklahoma.  As shown herein, that, however, is not the case.

The fact that some Chesapeake employees work in Oklahoma or that other relevant personnel, such as outside counsel, engineers, or analysts, worked from Houston, Dallas, and Tulsa (Def. Mem. at 15), does not outweigh the injury felt in New York or the fact that two of the Underwriter Defendants as well as Lehman were headquartered in New York.  In sum, since the operative facts giving rise to this case occurred in both Oklahoma and the Southern District, this factor also does not weigh in favor of transfer.[5]

Finally, the subpoena power of the Southern District does not prejudice any of the parties involved in this case, because discovery of out-of-state witnesses is frequently conducted during the course of federal litigation.  Moreover, the Western District of Oklahoma will have no greater subpoena power than the Southern District in compelling the various non-party witnesses to appear, but, in fact, may have less.  In any event, this issue is irrelevant because Defendants have not identified any witness who will be unwilling to attend the trial of this action absent the compulsion of a subpoena, or any knowledgeable witnesses unwilling to appear who cannot be adequately represented through deposition testimony.  Defendants claim generally that third party witnesses would not be "amenable" to process in the Southern District but fail to provide any evidence for such a claim.  Def. Mem. at 13.  Therefore, no prejudice would likely be inflicted upon either party by maintaining an already proper venue in the Southern District nor does this factor favor transfer.

---

[5]     *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, (Def. Mem. at 7), is further distinguishable because in that case, the ***only*** tie to New York was that shares were purchased and sold on a securities exchange in New York, and even the underwriter was located in Michigan. Here, the operative facts occurred in both New York and Oklahoma and two Underwriter Defendants and Lehman Bros., a major non-party witness, are based in New York.

**IV.      CONCLUSION**

       For the reasons set forth herein, this Court should deny Defendants' Motion.

DATED:  June 15, 2009                COUGHLIN STOIA GELLER
                                    RUDMAN & ROBBINS LLP
                              SAMUEL H. RUDMAN
                              DAVID A. ROSENFELD

                                          /s/ David A. Rosenfeld
                          ——————————————————
                              DAVID A. ROSENFELD

                              58 South Service Road, Suite 200
                              Melville, NY  11747
                              Telephone:  631/367-7100
                              631/367-1173 (fax)

                              COUGHLIN STOIA GELLER
                                RUDMAN & ROBBINS LLP
                              DARREN J. ROBBINS
                              BRIAN O. O'MARA
                              655 West Broadway, Suite 1900
                              San Diego, CA  92101
                              Telephone:  619/231-1058
                              619/231-7423 (fax)

                              Lead Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I, David A. Rosenfeld, hereby certify that on June 15, 2009, I caused a true and correct copy of the attached:

Lead Plaintiff's Memorandum of Law In Opposition To Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(A)

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel on the attached service list.

_____ s/ *David A. Rosenfeld* _____
David A. Rosenfeld

CHESAPEAKE ENERGY 09

Service List - 6/15/2009   (09-0036)

Page 1 of  1

**Counsel For Defendant(s)**

Robert P. Varian
Joseph E. Giometti
Lily I. Becker
Orrick, Herrington & Sutcliffe LLP
The Orrick Building, 405 Howard Street
San Francisco, CA  94105-2669
   415/773-5700
   415/773-5759 (Fax)

Barry G. Sher
Hissan Ahsan Bajwa
Daniel B. Goldman
Paul, Hastings, Janofsky & Walker LLP
75 East 55th Street
New York, NY  10022
   212/318-6000
   212/319-4090 (Fax)

**Counsel For Plaintiff(s)**

Jack G. Fruchter
Abraham, Fruchter & Twersky, LLP
One Pennsylvania Plaza, Suite 2805
New York, NY  10119
   212/279-5050
   212/279-3655 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Mario  Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747
   631/367-7100
   631/367-1173 (Fax)

Darren J. Robbins
Brian O. O'Mara
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
   619/231-1058
   619/231-7423 (Fax)