UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAFRON CAPITAL CORPORATION, et. al.,<br><br>Plaintiff,<br><br>-against-<br><br>CHESAPEAKE ENERGY CORPORATION, et. al.,<br><br>Defendants. | 09-CIV-1826 (LTS)<br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE WESTERN DISTRICT OF OKLAHOMA** |

OHS West:260680192.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND OVERVIEW ................................................................. 1

ARGUMENT ..................................................................................................... 3

    I.    Legal Standards ................................................................................. 3

    II.   Plaintiff's Resort to Baseless Accusations Merely Underscores Its Inability to Deal with the Issues .......................................................... 4

    III.  Transfer to the W. D. of Okla. Would Promote the Convenience of Parties and Witnesses, and the Interests of Justice ............................ 5

        A.    Oklahoma is Unquestionably the Locus of Operative Facts and Center of Gravity of the Dispute in Oklahoma ........................... 5

        B.    The Convenience of Material Witnesses Favors Transfer ......... 7

        C.    The Convenience of the Parties Favors Transfer ...................... 8

        D.    All Key Witnesses are Within the Subpoena Power of the Western District of Oklahoma ................................................. 9

        E.    The Majority of Relevant Documents are in Oklahoma ........... 9

        F.    Plaintiff's Choice of Forum Should Be Accorded Minimal Weight ....... 10

CONCLUSION ................................................................................................ 10

## INTRODUCTION AND OVERVIEW

Plaintiff's Opposition is long on rhetoric but woefully short on substance. It makes no attempt at an evidentiary showing of any kind, and no meaningful effort to challenge the facts and legal authorities cited in the Motion. Rather than providing information and argument that might assist the Court in making a reasoned determination of the issues tendered in the Motion, plaintiff serves up a hodgepodge of unfounded accusations, hyperbole and sweeping assertions that bear little resemblance to the facts.

Defendants' Motion sets forth a detailed evidentiary showing based on the allegations in the complaint, the issues to be litigated in connection with the allegations, and the factors to be weighed under Section 1404(a). In sharp contrast to the Opposition, it: (1) identified specific activities, witnesses, documents and testimony; and (2) demonstrated how and why they are important in the context of the specific allegations and claims set forth in the complaint. The Motion further established where the important witnesses and documents are located, including the absence of significant witnesses, documents or activities in the Southern District of New York. In addition, defendants showed precisely why it would be burdensome and unreasonable for Chesapeake and the third-party witnesses to litigate the asserted claims on the East Coast. The entirety of that detailed and comprehensive demonstration was supported by five declarations from witnesses with personal knowledge of the facts they recounted under oath.

Plaintiff has ignored the evidentiary showing, and responded with empty posturing and irresponsible advocacy. The Opposition does not -- and cannot -- challenge any of the facts set forth in the Motion. It does not identify a single witness, document or category of documents. Nor does it discuss particular activities or prospective testimony. Most importantly, plaintiff does not make the slightest effort to explain how or why any witness, document, activity or prospective testimony might be significant in the context of the issues to be litigated.

Without attempting to <u>demonstrate</u> that this case should not be transferred under the relevant facts, plaintiff <u>pronounces</u> that there is no reasonable basis for doing so, and attempts to dismiss the Motion as "nothing more" than "brazen gamesmanship." Opp. pp. 1, 6. Worse still, the Opposition implies that defendants' "real" motive in seeking a transfer is not the myriad of factors identified in the Motion, but a desire to use "powerful political ties" to manipulate the federal judicial system to their advantage. *Id*. Such tactics bespeak desperation.

Perhaps because plaintiff is unable to make a dent in the overwhelming showing set forth in the Motion, the Opposition states that defendants must discharge an "exceedingly heavy burden" under a statute that was in fact designed to facilitate an easy change of venue within the federal judicial system, and proclaims that defendants have "utterly failed" to do so. Opp. p. 1. The "substance" of plaintiff's claim on the latter point boils down to three assertions, none of which has even superficial merit.

<u>First</u>, plaintiff contends that this district is more convenient for the underwriter defendants. Apart from the fact that the <u>underwriters do not oppose the Motion</u>, plaintiff simply ignores the fact that (as demonstrated in the Motion) the only underwriter personnel who might be witnesses in this action are in Texas, not in New York.

<u>Second</u>, the Opposition attempts to portray Lehman Brothers as the focal point of the complaint, and argues that New York is a more convenient forum because Lehman was formerly headquartered in New York and is currently in bankruptcy proceedings there. Lehman is plainly not the focal point of the complaint, and the fact that its bankruptcy proceeding is in New York has nothing whatsoever to do with this case. Moreover, as established in the declarations filed with the Motion, the potential Lehman witnesses in this case were in Houston, not in New York.

<u>Third</u>, plaintiff claims that its purported choice of forum should be accorded paramount importance. The threshold problem with that assertion is that plaintiff did not choose this forum, or

even file a complaint, and is located in Ohio, not New York. Even if plaintiff had chosen this forum, had filed a complaint, and was located in New York, the contention would be legally unfounded. Plaintiff's choice of forum is entitled to nearly no weight when, as in this case, the lawsuit is a national class action brought on behalf of a multitude of claimants dispersed throughout the United States and has no meaningful connection with the forum.

## ARGUMENT

### I.  Legal Standards

Courts have broad discretion to transfer actions to another district court "to prevent waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). Indeed, Section 1404(a) was enacted to permit an "easy change of venue" between federal courts. *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d, 142, 148 (2nd Cir. 2000) (emphasis added).

Because securities class actions focus on the conduct of the defendants, they are almost invariably filed in the district in which the issuer has its headquarters and principal place of business. See Motion, p. 5. While there is not literally a "per se rule requiring . . . transfer of a securities-fraud action to the district where the issuer is headquartered . . . as a practical matter such transfers are routine." *In re Hanger Orthopedic Group, Inc.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006). *See, e.g., In re Global Cash Access Holdings, Inc. Secs. Litig.*, 2008 WL 4344531 at *4 (S.D.N.Y. Sept. 18, 2008) (transferring a Section 11 securities class action to the district of defendant's headquarters even though the underwriters were in New York); *Greenwood Partners v. New Frontier Media Inc.*, 2000 WL 278086, at *5 (S.D.N.Y. Mar. 14, 2000); *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 661 (S.D.N.Y. 1998). The Opposition does not, and cannot, distinguish

these cases or the decisions cited at pages 6-7 of the Motion. Indeed, plaintiff is forced to rely almost exclusively on cases that were <u>not securities class actions</u> in attempting to argue this point.

## II. Plaintiff's Resort to Baseless Accusations Merely Underscores Its Inability to Deal with the Issues

Confronted with an overwhelming factual demonstration that the transfer of this action to the Western District of Oklahoma would further the convenience of parties and witnesses, and the interests of justice, the Opposition falls back on unsupported accusations and innuendo. Accusing defendants of "brazen gamesmanship" and characterizing the Motion as "nothing more than a transparent attempt" to gain a tactical advantage adds nothing to the analysis under Section 1404(a). The intimation that defendants' Motion is an attempt to exploit the former political connections two of Chesapeake's directors (Opp., pp. 1, 6) is not merely baseless and insulting; it is irrelevant.

Defendants' request is based on "more" than evil motives and gamesmanship, as anyone reading the Motion and accompanying declarations would quickly realize. That is no doubt why plaintiff has resorted to accusations, rather than facts.

Without belaboring the point, the demonstration plaintiff refuses to acknowledge makes clear that no significant actions occurred in, and no relevant witnesses are located in, the Southern District of New York. It further shows that the vast majority of significant activities, witnesses and evidence is concentrated in the Western District of Oklahoma, and that the balance is centered in nearby Texas. The underwriting personnel who worked on the offering and prior due diligence are in Texas and performed ongoing due diligence at Chesapeake's headquarters in Oklahoma City. Virtually all of the work related to the offering and plaintiff's allegations occurred in Oklahoma City. Plaintiff does not challenge any of these facts; nor could it.

**III. Transfer to the W. D. of Okla. Would Promote the Convenience of Parties and Witnesses, and the Interests of Justice**

As noted at page 6 of the Motion, the factors considered in a 1404(a) motion to transfer are: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents; (4) the locus of operative facts; (5) the availability of process to compel witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) weight accorded to the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice. *In re Nematron Corp.*, 30 F. Supp. 2d at 400. The Opposition concedes that factors 6 and 7 are not at issue in this analysis, and does not dispute that factor 9 weighs in favor of transfer. As discussed below, plaintiff has offered nothing to undermine defendants' demonstration that the remaining factors overwhelmingly favor a transfer of this case to the Western District of Oklahoma.

**A. Oklahoma is Unquestionably the Locus of Operative Facts and Center of Gravity of the Dispute in Oklahoma**

Plaintiff's argument that the locus of operative facts for this litigation is New York is both legally and factually baseless. Indeed, the Opposition relies on case law regarding <u>venue</u> when discussing the locus of operative facts. The issue is not whether venue is proper in the Southern District of New York; it is whether a transfer to the Western District of Oklahoma would help avoid a "waste of time, energy and money" brought on by "unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616.

Plaintiff's complaint is based on alleged statements and omissions in Chesapeake's July 15, 2008 registration statement. The law is clear that misrepresentations or omissions occur "where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006); *See, e.g., In re Hanger Orthopedic Group*, 418 F. Supp. 2d at 169 ("As in any securities-fraud action, plaintiffs' claims are based on defendants' alleged misrepresentations and omissions, all of

which originated in [defendants' home state]").  "[T]hat the shares were directed to New York does not make it a forum which has a significant contact with the operative facts." *In re Nematron*, 30 F. Supp. 2d at 400.

That the underwriters on the offering are headquartered in New York is irrelevant, and it makes no difference that personnel in the syndicate group were located there.  Even when "certain aspects of [an] IPO and Secondary Offering occurred" in New York, "they are insufficient to pull the 'center of gravity' of this litigation away from" Oklahoma.  *See In re Global Cash Access Holdings*, 2008 WL 4344531 at *6.  Plaintiff's assertions simply ignore the fact that, as the Motion (p. 3) established, the individuals who performed due diligence and played the lead roles on behalf of the underwriters were in <u>Texas</u>, and the focal point of their activities was Oklahoma City.  It does not matter whether book-building and distribution activities occurred in New York.  They are not at issue in the lawsuit.  Furthermore, there are only 4 underwriter defendants in this matter -- Banc of America Securities, UBS Investment Bank, ABN AMRO, and Wells Fargo Securities.  As noted, UBS played a lead role and operated out of its Texas offices.  ABN AMRO and Wells Fargo played subsidiary roles and are not headquartered in New York City. Complaint ¶23-24.

The offering documents and incorporated SEC statements were prepared in Oklahoma City. See Motion pp. 3, 5.  The due diligence for the offering occurred in Oklahoma City.  See *id.*  The hedging transactions and land acquisition strategies plaintiff complains about were conducted in Oklahoma City.  See *id.* p. 3-4.  Those responsible for Chesapeake financial statements are in Oklahoma.  See *id.* p. 5.  Oklahoma City is the location of Chesapeake's headquarters and home of the corporate management team.  See *id.* p. 2.  There is no basis whatsoever for plaintiff's contention that Oklahoma City is not the locus of operative facts.  Nothing of consequence occurred in or near New York.

6

The claim that the location of Lehman somehow shifts the locus of operative facts is equally unfounded. Plaintiff ignores the fact that the relevant Lehman personnel were in Texas. See Motion p. 4. Plaintiff's attempt to cast Lehman Brothers as a focal point of the complaint is both insupportable and irrelevant. The complaint alleges six distinct omissions, only one of which involves hedging transactions in which Lehman was a counterparty. Complaint ¶ 42. Furthermore, all decisions relating to those transactions occurred in Oklahoma City. See Motion p. 4.

### B.       The Convenience of Material Witnesses Favors Transfer

"[C]ourts consider the convenience of witnesses as the single most important factor." *Greenwood Partners*, 2000 WL 278086 at *2; *Berman*, 30 F. Supp. 2d at 657. The assessment of the convenience of witnesses focuses on "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).

The Opposition makes no effort whatsoever to address the nature, materiality or quality of any witness or any prospective testimony. That is not an accident.

In sharp contrast to the detailed discussion of the nature, materiality and quality of specific witnesses and the role they will play in the litigation, plaintiff trumpets the fact that Lehman was headquartered in New York and is presently in bankruptcy proceedings in this district. The location of Lehman's bankruptcy has absolutely no bearing on any issue in this case. Plaintiff's claims are based in Chesapeake's registration statements, and, as noted, the Lehman personnel who might have knowledge on that subject were in Texas, not New York. Furthermore, as noted, the complaint alleges six separate omissions from the Registration Statement, only one of which relates in any way to Lehman or its affiliates. See Complaint ¶ 42.

Nor, as noted above, does it matter that individuals who performed tasks that have nothing to do with the issues to be litigated were employed by underwriters that played subsidiary roles in

the offering worked in New York.  Again, the key players who were involved in the activities at issue were in Texas.  Moreover, when, as in this case, "[t]he only potential New York witnesses evidenced in the record are the as-yet-unnamed current and former employees of the Lead and Non-Lead Underwriter Defendants . . . the convenience of the witnesses weighs in favor of transfer." *In re Global Cash Access Holdings.*, 2008 WL 4344531 at *4.  Most importantly, the underwriters <u>do not object</u> to the transfer of this action to the Western District of Oklahoma.

### C.       The Convenience of the Parties Favors Transfer

Since the lead plaintiff does not reside in New York, it "cannot claim that New York is the more convenient forum for" it.  *In re Hanger Orthopedic Group*, 418 F. Supp. 2d at 169.  Trials in securities class actions focus almost entirely on the conduct of the defendant; "[a]ccordingly, the convenience of the defendants and witnesses is the appropriate focus" in determining a motion to transfer a securities class action.  *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 233 (S.D.N.Y. 2003).  The court should not consider the convenience "of the Underwriter Defendants, who do not oppose the motion."  *In re Global Cash Access Holdings*, 2008 WL 4344531 at *5.  In any event, the underwriter witnesses who are in a position to give material testimony are not in New York.

When a company is headquartered outside the district in which it is sued, and its senior management and other witnesses are located there, it has a "compelling claim" for transfer because trial in the district selected by the plaintiff "carries a real risk of disrupting company operations." *In re Hanger Orthopedic Group*, 418 F. Supp. 2d at 169.  As demonstrated at page 10 of the Motion, <u>all</u> of Chesapeake's senior management, and all of the other key employees who might be called as witnesses, are located in (or in a few instances in the process of transferring to) Oklahoma City.  There are <u>no</u> Chesapeake employees with knowledge related to this litigation in New York.

Plaintiff does not, and cannot, dispute the fact that litigating this case in New York would significantly inconvenience Chesapeake. Nor can plaintiff deny that it would not bear even an iota more inconvenience by litigating this case in Oklahoma, as opposed to New York. The underwriter defendants do not oppose the motion. Even if the court were to consider the convenience of the underwriter defendants, this factor would still favor transfer, because the lead underwriters in this offering are in Texas.

### D. All Key Witnesses are Within the Subpoena Power of the Western District of Oklahoma

As repeatedly demonstrated in the Motion and the five declarations filed therewith, the vast majority of relevant witnesses are located in the state of Oklahoma, and none are in the Southern District of New York. Unable to dispute this key fact, plaintiff simply asserts that the case can be entirely conducted by deposition, a practice which is strongly disfavored. "[L]ive testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor." *Iragorri v. United Technologies Corporation*, 274 F. 3d 65, 75 (2d Cir. 2001). Because the Lehman personnel with whom Chesapeake dealt resided in Texas, they are not within the subpoena power of New York. In fact, none of the significant third-party witnesses who reside outside Oklahoma is amendable to process in the Southern District of New York. Thus, <u>no</u> material witness is within the subpoena power of this district.

### E. The Majority of Relevant Documents are in Oklahoma

Even in this electronic age, when the transfer of documents has become less of a burden, it is still "more convenient to conduct this litigation in the district where most of the relevant documents are located . . . ." *In re Collins & Aikman*, 438 F. Supp. at 396-97. Plaintiff does not, and cannot, dispute the Motion's detailed demonstration (see pp. 14-15) that the relevant documents are located in Oklahoma City. Unable to contest the location of relevant documents, plaintiff speculates that some underwriter documents may be located in New York. Again, plaintiff

ignores the facts set forth in the Motion that the lead underwriters are in Texas, not New York, and therefore any related documents would likely be in Houston.

### F. Plaintiff's Choice of Forum Should Be Accorded Minimal Weight

The Opposition's argument on this point is particularly hollow given the fact that plaintiff did not choose this forum, did not file a complaint, and is not located in New York. See Motion p. 16. It is being maintained in New York because plaintiff's <u>counsel</u> chose the forum on behalf of <u>another</u> client (Safron Capital) that has since been jettisoned, and the law is clear that the "convenience of counsel is not a consideration in the transfer analysis." *Bionx Implants, Inc. v. Biomet, Inc.*, 1999 WL 342306, at *4 (S.D.N.Y. 1999). Even if the facts were otherwise, this factor would be entitled to little or no weight, for three basis reasons.

First, a plaintiff's choice of forum is given little weight in a purported nationwide class action. *See, e.g., In re Nematron*, 30 F. Supp. 2d at 405 (citing *In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995). Second, plaintiff's choice of forum is entitled to less deference when, as here, the operative facts of the litigation "bear little, if any, connection to the Southern District of New York…." *In re Collins & Aikman*, 438 F. Supp. 2d at 398. Third, plaintiff's choice of forum is entitled to even less weight when the plaintiff does not reside in that forum. *In re Hanger Orthopedic Group*, 418 F. Supp. 2d at 168. As demonstrated above, this case purports to be a national class action, the operative facts occurred in Oklahoma City and have no meaningful connection to this district, and plaintiff is not a resident of this district.

### CONCLUSION

For the reasons stated above and in the Motion, defendants request that this action be transferred to the Western District of Oklahoma.

Dated:  June 25, 2009        Respectfully submitted,


ORRICK, HERRINGTON & SUTCLIFFE LLP


By:        */s/ Robert P. Varian*
        ROBERT P. VARIAN
        JOSEPH GIOMETTI
        LILY BECKER

Attorneys for Defendants
Chesapeake Energy Corporation,
Aubrey K. McClendon, Marcus C. Rowland,
Michael A. Johnson, Richard K. Davidson,
Frank A. Keating, Breene M. Kerr,
Charles T. Maxwell, Merrill A. Miller, Jr.,
Donald L. Nickles, Frederick B. Whittemore

The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
(415) 773-5700

## CERTIFICATE OF SERVICE

I, Robert P. Varian, hereby certify that on June 25, 2009 I caused the foregoing

document to be electronically filed with the Clerk of Court using the CM/ECF system

which will send notification to all CM/ECF subscribers, and caused a true and correct

copy to be sent via U.S. Mail to any and all non-CM/ECF participants who are required

to be manually served in this case.

I certify under penalty of perjury under the laws of the United States that the

foregoing is true and correct.  Executed June 25, 2009.

Dated:  June 25, 2009               Respectfully submitted,

                                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                    By:          */s/ Robert P. Varian*
                                            ROBERT P. VARIAN
                                            JOSEPH GIOMETTI
                                            LILY BECKER

                                        Attorneys for Defendants
                                     Chesapeake Energy Corporation,
                                Aubrey K. McClendon, Marcus C. Rowland,
                                Michael A. Johnson, Richard K. Davidson,
                                    Frank A. Keating, Breene M. Kerr,
                                Charles T. Maxwell, Merrill A. Miller, Jr.,
                                Donald L. Nickles, Frederick B. Whittemore

                                    The Orrick Building
                                    405 Howard Street
                                    San Francisco, CA  94105-2669
                                    (415) 773-5700

# Mailing Information for a Case 1:09-cv-01826-LTS

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

**Hissan Ahsan Bajwa|**
hissanbajwa@paulhastings.com,hissan@gmail.com

**Lily I. Becker**
lbecker@orrick.com

**Jack Gerald Fruchter**
jfruchter@aftlaw.com

**Joseph E. Giometti**
jgiometti@orrick.com

**Daniel Bruce Goldman**
dangoldman@paulhastings.com

**Christopher J. Keller**
ckeller@labaton.com,ejo@labaton.com,ElectronicCaseFiling@labaton.com

**Mark Peter Kindall**
firm@izardnobel.com

**David Avi Rosenfeld**
drosenfeld@csgrr.com,e_file_ny@csgrr.com

**Reagan Therese Roth**
reaganroth@paulhastings.com

**Samuel Howard Rudman**
srudman@csgrr.com,e_file_ny@csgrr.com

**Barry G. Sher**
BarrySher@paulhastings.com,LawrenceMehringer@paulhastings.com

**Robert P. Varian**
rvarian@orrick.com

**<u>Manual Notice List</u>**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Mary K. Blasy**
Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P.
655 W. Broadway
Suite 1900
San Diego, CA 92101